IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Maritza Dominguez Braswell**

Civil Action No. 24–cv–02465–MDB

SHERI HUFF, surviving child and next of kin of Fredrick Huff, deceased,

   Plaintiff,

v.

DOMINIC VERQUER, Las Animas County Coroner, individually and in his official capacity,

   Defendant.

## ORDER

This matter is before the Court on Defendant's Motion to Dismiss. (["Motion"], Doc. No. 15.) Plaintiff has filed a response to the Motion (["Response"], Doc. No. 17), to which Defendant has replied. (["Reply"], Doc. No. 18.) After reviewing the Motion, briefing, and relevant law the Court **GRANTS in part and DENIES in part** the Motion.

### STATEMENT OF THE CASE

Plaintiff brings this case against the Las Animas County Coroner in connection with the alleged mishandling of the remains of Fredrick Huff ("Deceased" or "Mr. Huff"). Plaintiff is Mr. Huff's daughter.

*Identification of Body & DNA Samples*

On or around September 15, 2019, a decomposed human body was recovered by the Las Animas County Sheriff's Office. (Doc. No. 1 at ¶ 9.) On or around September 23, 2019, Dr. Daniel Lingamfelter conducted an autopsy of the Deceased. (*Id.* at ¶ 10.) Defendant was

allegedly present at the autopsy, during which a femur was collected for DNA analysis and preservation at the Coroner's Office. (*Id.* at ¶¶ 10–11.) Las Animas County (the "County") officials believed the recovered body was a locally known "transient" known as "Fred." (*Id.* at ¶ 12.)

On December 30, 2021, Plaintiff filed a missing person report for Mr. Huff with the Lubbock, Texas Police Department—the last known location of Mr. Huff. (*Id.* at ¶ 12.) Plaintiff says she was also in contact with Detective Sergeant Jennifer Lay of the Trinidad Police Department, in Trinidad Colorado. (*Id.* at ¶ 13.) Sergeant Lay told Plaintiff she knew a "Fred" had been found in Las Animas years prior. (*Id.*) This prompted Plaintiff to contact Las Animas County Sherrif's Department Sergeant Phil Martin on January 6, 2022. (*Id.* at ¶ 14.) During that call, Plaintiff expressed her belief that "Fred" was her missing father. (*Id.*) Sergent Martin subsequently told Defendant about the January 6, 2022 call with Plaintiff. (*Id.*)

On January 14, 2022, Plaintiff submitted a DNA sample to the University of North Texas, in order to compare her sample with the DNA found in Mr. Huff's femur bone.[1] Plaintiff was told the DNA analysis could take up to a year. (*Id.* at ¶ 15.) On February 8, 2023, over a year after Plaintiff provided her sample, Plaintiff contacted Sergeant Martin for an update. (*Id.* at ¶ 16.) Sergeant Martin informed Plaintiff her DNA sample had been destroyed for unknown reasons, and that the femur bone was never sent to the University of North Texas for analysis. (*Id.*) On February 17, 2023, Plaintiff submitted a second DNA sample. (*Id.* at ¶ 17.) This sample was compared with Mr. Huff's DNA, and the analysis confirmed the Deceased was Plaintiff's father. (*Id.* at ¶ 18.)

---

[1] Mr. Huff's remains were still in the custody of Las Animas County at that time.

*Access to Remains & Discovery of Mass Grave*

Subsequent to Mr. Huff's remains being identified, Defendant allegedly ordered them interred by the County at Starkville Cemetery. (*Id.*) Plaintiff alleges she "later"[2] contacted Defendant and asked for the "the contact information of the cemetery's landowner in order to arrange for a headstone and memorial service for her father." (*Id*. at ¶ 19.) However, according to Plaintiff, Defendant refused to provide Plaintiff with any information or access to the Deceased unless Plaintiff signed a waiver releasing the County from any legal liability. (*Id.*) Defendant also allegedly claimed ignorance about the cemetery's ownership and access. (*Id*. at ¶ 20.)

Plaintiff alleges she subsequently[3] contacted Jodi Amato, the County's Assessor, who provided contact information for Carl Mestas, the cemetery landowner. (*Id.* at ¶ 21.) Plaintiff sent written correspondence to Mr. Mestas, asking to set a headstone and hold a memorial service.[4] (*Id.* at ¶ 22.) However, Mr. Mestas told Plaintiff "he was unaware of any burials on his land by [Defendant]." (*Id.*)

---

[2] The Complaint does not specify when this contact occurred, but based on the dates the Complaint does provide—and its description of the timeline in question—it seems to have occurred sometime during the spring or summer of 2023. *But see infra* at n. 4.

[3] Plaintiff does not give a date for this contact, but, based on her allegations it seems to have occurred during the spring or summer of 2023. *But see infra* at n. 4.

[4] The Complaint says this correspondence was sent on October 10, 2022 (Doc. No. 1 at ¶ 22), but based on the allegations presented, this seems impossible. Plaintiff alleges she did not have confirmation of her father's death until February, 2023. (*Id.* at ¶ 18.) Moreover, she alleges Defendant did not order the burial of the Deceased until sometime *after* it was confirmed the Deceased was Plaintiff's father. (*Id.*) The Complaint also appears to allege Plaintiff did not receive Mr. Mestas' contact information until *after* the Deceased was buried on his land. (*Id.* at ¶¶ 18–21.) Indeed, certain of Plaintiff's dates appear irreconcilable with certain allegations, but the facts that are irreconcilable with dates do not appear material to resolving the Motion.

Plaintiff appears to allege[5] that Mr. Mestas met with Defendant after corresponding with Plaintiff (*id.* at ¶ 22), and that Defendant gave Mr. Mestas a check "for less than $100" for the Deceased's cemetery plot.[6] (*Id.* at ¶ 23.) Plaintiff also alleges Defendant inappropriately showed Mr. Mestas photographs of Mr. Huff's remains and included the wrong dates on the Deceased's death certificate. (*Id.* at ¶ 24.)

Apparently concerned about the circumstances, Plaintiff sought disinterment. On April 20, 2023, she obtained a $5,100 loan to fund the disinterment, cremation, and reburial of her father. (*Id.* at ¶ 26.) Mr. Huff was disinterred on September 6, 2023. (*Id.* at ¶ 27.) Plaintiff alleges that, during the Deceased's disinterment, it was discovered that five bodies, including Mr. Huff's, were buried in the grave in question. (*Id.* at ¶ 27.) Plaintiff says Mr. Mestas was unaware of the mass grave and that Defendant failed to obtain proper burial permits. (*Id.* ¶ 27–28.)

### *The Instant Lawsuit & Motion*

Plaintiff brings six claims: (1) Outrageous Conduct, (2) Mishandling of a Body, (3) Negligence, (4) Unjust Enrichment, (5) Fraud, and (6) Negligence *per se*. (*Id.* at ¶¶ 34–94.) Defendant is sued in his individual and official capacities. (*Id.* at ¶ 4.)

---

[5] The Court deliberately uses the phrase "appears to allege," because Plaintiff does not provide any date for the meeting between Mr. Mestas and Defendant. Based on the context offered, it appears this meeting occurred *after* Plaintiff contacted Mr. Mestas (because Plaintiff's correspondence was the first indication Mr. Mestas had that the County had performed certain burials on his land). Alternatively, Plaintiff may be alleging that it occurred *prior* to her correspondence with Mr. Mestas and that Mr. Mestas lied to her about his lack of knowledge as to burials by the County on his land, but this interpretation does not appear supported by the surrounding allegations.

[6] Plaintiff says that upon learning of this she offered to reimburse Defendant for the cost, but the offer was declined. (*Id.* at ¶ 23.)

4

Defendant moves to dismiss all claims against him, arguing Plaintiff failed to provide proper notice of the suit under the Colorado Governmental Immunity Act ("CGIA"), depriving this Court of subject matter jurisdiction. (Doc. No. 15 at 7–8.) Plaintiff says she has complied with the CGIA and attaches a copy of the CGIA notice sent to Colorado's Attorney General, the "Las Animas County District Attorney," and the Colorado Governor's Office. (Doc. No. 1 at ¶ 2; Doc. No. 1-1.)[7] Defendant argues, in the alternative, that Plaintiff has failed to set forth plausible claims for relief. (Doc. No. 15 at 8–11.)

## LEGAL STANDARD

### I.   Fed. R. Civ. P. 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When ruling on such a motion, a court accepts all well-pleaded facts as true and views the allegations in the light most favorable to the plaintiff. *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010). However, the plaintiff bears the burden of presenting a complaint with enough factual details to suggest entitlement to relief. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Indeed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Ultimately, the Court evaluates "whether the complaint sufficiently alleges facts

---

[7] At the motion to dismiss stage, a court may "consider documents attached to or referenced in the complaint if they 'are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'" *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017) (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)).

supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## ANALYSIS

**I.     The Colorado Governmental Immunity Act's Notice Requirement**

Defendant argues Plaintiff failed to mail her CGIA claim to the proper entities and thus has failed to provide proper notice under the CGIA prior to filing this suit. (Doc. No. 15 at 7–8); *see* Colo. Rev. Stat. § 24-10-109 (requiring "[a]ny person claiming to have suffered an injury by a public entity or by an employee thereof" to "file a written notice as provided in this section within one hundred eighty-two days after the date of the discovery of the injury"); *see also Finnie v. Jefferson Cty. Sch. Dist. R-1*, 79 P.3d 1253, 1258 (Colo. 2003) (saying the purpose of this notice requirement is to "avoid[ ] prejudice to the governmental entity, encourag[e] settlement, and provid[e] public entities the opportunity to investigate claims, remedy conditions, and prepare defense of claims"). Under the CGIA, "[i]f the claim is against the state or an employee thereof, the notice shall be filed with the attorney general. If the claim is against any other public entity or an employee thereof, the notice shall be filed with the governing body of the public entity or the attorney representing the public entity." Colo. Rev. Stat. § 24-10-109(3)(a).

"Under Colorado law an alleged failure to send a CGIA notice to the correct location gives rise to an affirmative defense." *Scott v. Cary*, 829 F. App'x 334, 337 (10th Cir. 2020) (citing *Univ. of Colo. v. Booth*, 78 P.3d 1098, 1100 (Colo. 2003)).[8] Indeed, "[a]lthough Colorado

---

[8] The Court acknowledges that *Scott* is an unpublished decision. However, the decision is sufficiently on point, and the Court finds it persuasive. Moreover, courts in this District have echoed *Scott*'s reasoning. *See Scott v. Cary*, 2019 WL 5957295, at *5 (D. Colo. Nov. 12, 2019)

considers the timeliness of notice under the CGIA to be a jurisdictional matter," the alleged failure to send notice to the correct entity "is not." *Id.* at 336 (citing *Booth*, 78 P.3d at 1100; *Finnie*, 79 P. 3d at 1256 ("[S]ection 24-10-109(3) [provides] a statutory defense to claims rather than creating a jurisdictional prerequisite to suit.")). Because this is not a subject matter jurisdiction challenge pursuant to Rule 12(b)(1), but rather a request for dismissal pursuant to an affirmative defense, the Court will consider the challenge under Rule 12(b)(6). *Id.* at 336–37 ("Therefore, contrary to Defendant['s] suggestion, Federal Rule of Civil Procedure 12(b)(1), which concerns challenges to subject-matter jurisdiction, [is] not in play on this issue.... We therefore agree with the district court that the proper framework for addressing Defendants' motion was under Federal Rule of Civil Procedure 12(b)(6).").

A court should "dismiss a claim on the pleadings based on an affirmative defense only when the complaint itself admits all the elements of the affirmative defense by alleging the factual basis for those elements." *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018); *see Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004) ("Only when the plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable defense—may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6)."). The bar for pleading CGIA compliance is relatively low. *See Scott*, 829 F. App'x at 337 ("Generally, an allegation such as the following would suffice: 'Plaintiff fully complied with

---

("[S]ubsection (3), which prescribes the entity to which notice must be sent, operates only as 'a statutory defense to claims rather than creating a jurisdictional prerequisite to suit.'" (quoting *Finnie*, 79 P.3d at 1256)), *aff'd*, 829 F. App'x 334 (10th Cir. 2020); *see also Vreeland v. Vigil*, 2021 WL 231450, at *2 (D. Colo. Jan. 22, 2021) (noting a plaintiff must simply "plead compliance with the CGIA's notice provisions" to survive a motion to dismiss predicated on who the plaintiff provided the notice to).

the provisions of Colo.Rev.Stat. section 24-10-109.'") (quoting *Aspen Orthopaedics & Sports Med., LLC v. Aspen Valley Hosp. Dist.*, 353 F.3d 832, 840 (10th Cir. 2003)).

According to Defendant, when Plaintiff mailed the CGIA notice to Colorado's Attorney General, the "Las Animas County District Attorney," and the Colorado Governor's Office,[9] she failed to send notice to "the governing body of the public entity or the attorney representing the public entity," as required by Colo. Rev. Stat. § 24-10-109(3)(a). That is, Defendant argues that Plaintiff was required, but failed, to send notice to the Las Animas County Board of Commissioners or the Las Animas County Attorney.

At this stage, however, Plaintiff has pled enough to survive the 12(b)(6) challenge. First, there is no question Plaintiff pled compliance with the CGIA. (Doc. No. 1 at ¶ 2 ("Plaintiff has satisfied all requirements under the CGIA statute and has filed her case pursuant to the time limitations set forth in § C.R.S. 24-10-109.")). Second, it appears at least possible that the Las Animas County Attorney received the CGIA notice. Though Plaintiff purports to have mailed her CGIA notice to the "Las Animas County *District* Attorney"—an entity which does not exist[10]—

---

[9] The Motion repeatedly contends Plaintiff's third proof of mailing says notice was sent to "Colorado Coroner's Office." (*See* Doc. No. 15 at 8.) But this is not correct, because the proof of mailing appears to say, "Colorado *Governor's* Office." (Doc. No. 1-1 at 3 (emphasis added).) The Court's reading of the proof of mailing is further supported by the address included, 200 E. Colfax Ave, which is the Governor's Office's address. *See Connect With Us*, Colorado Governor Jared Polis, https://dashboard.colorado.gov/connect-with-us (last visited July 7, 2025). Regardless, this confusion is immaterial to the Court's analysis.

[10] Whereas county attorneys represent a given county's board of county commissioners, *see* Colo. Const. art. XIV, § 8., district attorneys prosecute offenses occurring within judicial districts, often made up of multiple counties. *See* Colo. Rev. Stat. § 20-1-101 *et seq*. Las Animas County is located within the Third Judicial District along with Huerfano County. *See* Colo. Rev. Stat. § 13-5-104.

the address she used for this mailing, 200 E. First St., Trinidad, CO 81082, *is the address for Las Animas County offices*. *See Home*, Las Animas County, https://lasanimascounty.colorado.gov/ (last visited July 8, 2025).[11] In other words, the Court knows this mailing reached the Las Animas County building, where someone accepted it. Thus, the Court "cannot say with certainty that the recipient of the notice was not authorized to accept service." *Scott*, 829 F. App'x at 337; *see id*. (declining to dismiss the plaintiff's claims on CGIA notice grounds when the plaintiff sent the notice to a non-existent city office, because the plaintiff pled compliance with the CGIA, "the nonexistence of [the] office [did] not appear on the face of the complaint," and the Court could not "say with certainty that the recipient of the notice was not authorized to accept service"); *see also Finnie*, 79 P.3d at 1258 (saying courts should "consider principles of agency and equity, the purposes of the statute, and concerns of protecting plaintiffs from misrepresentations by governmental entities" on a "case-by-case" basis to determine whether a notice sent to a party not listed in the statute complies)). Accordingly, the Court will not grant the motion to dismiss on these grounds.[12]

## II.     Federal Rule of Civil Procedure 12(b)(6)

---

[11] And though the Third Judicial District Attorney also has an office within the County's building (along with another office in Huerfano County), its suite number is 302, whereas the proof of mailing uses suite 102. *See List of Colorado District Attorneys*, Colorado Secretary of State, https://www.sos.state.co.us/pubs//charities/districtAttorneyList.html (last visited July 8, 2025). The Court attempted to confirm whether suite 102 was the County Attorney's office. Google's AI overview suggests that it is, but the Court was unable to confirm this to be the case. The Court notes that Las Animas County's failure to make the County Attorney's address easily accessible on its website adds additional context to Plaintiff's apparent confusion in issuing a CGIA notice.

[12] Defendant, of course, may later move for summary judgment on this affirmative defense. *See* Fed. R. Civ. P. 56 ("A party may move for summary judgment, identifying each claim or defense ... on which summary judgment is sought.").

Defendant alternatively argues Plaintiff fails to state plausible claims for relief. (Doc. No. 15 at 8–10.) The Court will address each claim in turn.

### A. Outrageous Conduct[13]

In Colorado, "[t]he elements of outrageous conduct are: (1) the defendant engaged in extreme and outrageous conduct; (2) the defendant engaged in such conduct recklessly or with the intent of causing the plaintiff severe emotional distress; and (3) the defendant's conduct caused the plaintiff to suffer severe emotional distress." *Smith v. Bd. of Educ. of Sch. Dist. Fremont RE-1*, 83 P.3d 1157, 1167 (Colo. App. 2003) (citing *Tracz v. Charter Centennial Peaks Behavioral Health Sys., Inc.,* 9 P.3d 1168 (Colo. App. 2000)). The Colorado Supreme Court has described this as a "high standard" requiring "allege[d] behavior by a defendant that is extremely egregious." *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 665 (Colo. 1999). Indeed, "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting *Rugg v. McCarty,* 476 P.2d 753, 756 (1970)); *see Han Ye Lee v. Colorado Times, Inc.*, 222 P.3d 957, 963 (Colo. App. 2009) (*"*Generally, liability for outrageous conduct exists when 'the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to

---

[13] The tort of "outrageous conduct" is also known as "intentional infliction of emotional distress." *See Eng. v. Griffith*, 99 P.3d 90, 93 (Colo. App. 2004) ("Plaintiffs acknowledge their claims of outrageous conduct and intentional infliction of emotional distress are simply 'two ways of stating the same claim.'"); *Han Ye Lee v. Colorado Times, Inc.*, 222 P.3d 957, 966 (Colo. App. 2009) (concurrence) (saying "the tort of intentional infliction of emotional distress" is "otherwise known as 'outrageous conduct'").

exclaim, "Outrageous!"'" (quoting *Churchey v. Adolph Coors Co.,* 759 P.2d 1336, 1350 (Colo. 1988)))).

"Before permitting a plaintiff to present a claim for outrageous conduct to the jury, the trial court must initially rule on the threshold issue of whether the plaintiff's allegations of outrageous conduct are sufficiently outrageous as a matter of law." *Id.* "Although the question of whether conduct is outrageous is generally one of fact to be determined by a jury, it is first the responsibility of a court to determine whether reasonable persons could differ on the question." *Culpepper v. Pearl St. Bldg., Inc.,* 877 P.2d 877, 883 (Colo. 1994).

Here, Plaintiff alleges Defendant haphazardly buried her father in a mass grave without the consent or knowledge of the landowner. She further alleges Defendant attempted to induce her to waive any legal claims against the County before Defendant would provide information about her father's grave. In the Court's view, a reasonable person could indeed conclude that such conduct was extreme and outrageous. *See Han Ye Lee*, 222 P.3d at 963 (collecting varied cases in which Colorado courts have found alleged conduct sufficient to support a claim for outrageous conduct); *see also Stump v. Gates*, 777 F. Supp. 808 (D. Colo. 1991) (allowing an outrageous conduct claim to proceed where the plaintiffs alleged inadequate investigation in connection to a death), *aff'd*, 986 F.2d 1429 (10th Cir. 1993). Of course, at summary judgment or trial, Defendant will have the opportunity to present evidence demonstrating the reasonableness of his alleged actions or disproving Plaintiff's allegations, but at this stage, the Court merely considers the allegations as presented by Plaintiff.

**B.  Mishandling a Body**

In the section describing this claim, Plaintiff references Colo. Rev. Stat. § 18-13-101. (Doc. No. 1 at ¶¶ 45–51.) As Defendant argues, Section 18-13-101 is a criminal statute and criminal statutes generally do not support a civil private cause of action. *See All. v. Alternative Holistic Healing, LLC*, 2016 WL 223815, at *3 (D. Colo. Jan. 19, 2016) ("There is a strong presumption that criminal statutes, enacted for the protection of the general public, do not create private rights of action."), *aff'd sub nom. Safe Streets All. v. Hickenlooper*, 859 F.3d 865 (10th Cir. 2017). Thus, to the extent Plaintiff seeks to bring a statutory claim somehow grounded in Colo. Rev. Stat. § 18-13-101, that claim fails.

To the extent Plaintiff seeks to bring a common law claim for mishandling of a body, that claim survives, for now. The Colorado Supreme Court appears to recognize a common law cause of action for the intentional mishandling of a body. *See Culpepper*, 877 P.2d at n.4 ("This court has allowed recovery when the mishandling of a dead body was willful and wanton."); *see also Spomer v. City of Grand Junction*, 355 P.2d 960 (Colo. 1960) (finding evidence of willful and wanton conduct in City's exhumation and reburial of son's body over parents' objections); *see generally Fitzsimmons v. Olinger Mortuary Ass'n,* 17 P.2d 535 (Colo. 1932) (although a contract claim, relied upon for the proposition that willful and wanton mishandling of a body can result in recovery). And because the parties do not address the sparse case law on this issue, the Court has no basis for determining whether the law extends to the circumstances here, or whether this claim is duplicative of other claims. (*See generally* Doc. No. 15 at 10; Doc. No. 17 at 8–9.) Therefore, the Court declines to dismiss this claim at this time. *See Blake v. Grede Foundries, Inc.*, 1997 WL 157126, at *5 (D. Kan. Mar. 20, 1997) ("The court will not grant a motion to

dismiss based on an argument not raised by the parties, especially where there is no controlling case law on the subject.").

### C. Negligence & Negligence *Per Se*

Plaintiff next contends Defendant negligently breached a duty of care to her in his treatment of Mr. Huff's body and burial, leading Plaintiff to suffer "severe emotional distress, physical injuries, economic and general damages." (Doc. No. 1 at ¶¶ 52–63.) Plaintiff cites various statutes that Defendant allegedly violated through his actions. (*Id.* at ¶¶ 83–94 (citing Colo. Rev. Stat. §§ 18-13-10, 30-10-619, 25-2-111(1)).) In his Motion, Defendant rejects these arguments saying, "[a]ny duty owed was to the body, not to Plaintiff." (Doc. No. 15 at 10; Doc. No. 18 at 5–6.)

Defendant is correct that a claim predicated on the negligent mishandling of a corpse—when brought by the next of kin—is generally not recognized. *See Kimelman v. City of Colorado Springs,* 775 P.2d 51 (Colo. App. 1988) (holding a theory of negligent infliction of emotional distress resulting from the mishandling of a dead body does not exist in Colorado); *Perry v. Saint Francis Hosp. & Med. Ctr., Inc.*, 865 F. Supp. 724, 729 (D. Kan. 1994) ("The majority rule holds that, for an individual to be liable for emotional distress for interfering with a dead body, the act must be intentional or malicious, as opposed to negligent, interference with the plaintiff's right to the body."); *Culpepper*, 877 P.2d at 880 (noting "few [courts] have allowed a plaintiff to proceed on a claim of negligence" in connection with the mishandling of a body); *see also Gonzalez v. Metropolitan Dade County Pub. Health Trust*, 626 So.2d 1030 (Fla. Dist. Ct. App. 1993) (denying recovery to parents of dead infant who were given wrong body for burial because they sustained no physical injury and the defendant did not act maliciously); *Burgess v. Perdue*, 721

P.2d 239 (Kan. 1986) (ruling that a cause of action against the physician who mistakenly performed an autopsy of the body of the plaintiff's son could be pursued only if the physician's actions were intentional or malicious, but not if they were negligent); *Sackett v. St. Mary's Church Soc'y,* 464 N.E.2d 956 (Mass. Ct. App. 1984) (precluding claim on defendant's negligent mishandling of casket during burial because plaintiffs suffered no physical injury and the mishandling was not intentional or reckless).

Plaintiff points to various provisions of Colorado law governing the manner in which a coroner must handle a body. (Doc. No. 17 at 8–9.) But the law Plaintiff cites does not create a private right of action. Moreover, Plaintiff does not address the case law Defendant cites, nor does she provide case law of her own to support her negligence claims. Thus, the Court sees no basis for maintaining these claims.

### D.  Unjust Enrichment

"In Colorado, a plaintiff seeking recovery for unjust enrichment must prove: (1) at plaintiff's expense (2) defendant received a benefit (3) under circumstances that would make it unjust for defendant to retain the benefit without paying." *Salzman v. Bachrach*, 996 P.2d 1263, 1265–66 (Colo. 2000) (citing *DCB Constr. Co. v. Central City Dev. Co.,* 965 P.2d 115, 119–20 (Colo. 1998)). "A benefit denotes any form of advantage," and can arise from "adding to the property of the adverse party or by saving the adverse party expense or loss." *Dove Valley Bus. Park Assocs., Ltd. v. Bd. of Cnty. Commissioners of Arapahoe Cnty.*, 945 P.2d 395, 403 (Colo. 1997). At bottom, unjust enrichment is "is a judicially created remedy designed to avoid benefit to one to the unfair detriment of another." *Salzman*, 996 P.2d at 1265 (citing *Cablevision of Breckenridge, Inc. v. Tannhauser Condominium Ass'n,* 649 P.2d 1093, 1097 (Colo. 1982)).

14

However, "unjust enrichment claims do not fit every fact pattern." *Purser v. Gilliland*, 2024 WL 5276679, at *9 (D. Colo. Nov. 21, 2024). Unjust enrichment is a theory of "quasi-contract" law, meant to reimburse a plaintiff for actions or property that benefited the defendant, but for which the plaintiff was not compensated. *Id.*; *see Ninth Dist. Prod. Credit Ass'n v. Ed Duggan, Inc.*, 821 P.2d 788, 794–95 (Colo.1991) (characterizing an unjust enrichment claim as a contract implied in law).

Here, Plaintiff's unjust enrichment claim is misplaced and fails as a matter of law. Plaintiff does not allege she incurred any expense that benefited Defendant. At most, Plaintiff spent $5,100 to have Mr. Huff disinterred, cremated, and reburied, but nothing in the Complaint suggests Defendant incurred some personal benefit from that particular expenditure. Moreover, even if the County saved an unspecified amount of money through the alleged mishandling of Decedent's body, such savings were independent from Plaintiff's expenses. Said another way, the County's burial cost was the same regardless of Plaintiff's later expenditure.[14] *See Owen-Brooks v. DISH Network Corp.*, 2024 WL 4338133, at *18 (D. Colo. Aug. 23, 2024) (recommending the dismissal of an unjust enrichment claim predicated on cost savings when "plaintiffs did not confer the cost-savings as a benefit; rather, Defendant conferred that benefit upon itself"), *report and recommendation adopted*, 2024 WL 4333660 (D. Colo. Sept. 27, 2024); *see also Gordon v. Chipotle Mex. Grill, Inc.*, 344 F. Supp. 3d 1231, 1244-45 (D. Colo. 2018) (finding similarly).

---

[14] Plaintiff's $5100 expenditure may be relevant to a damages calculation on claims that make it to a trial. But the expenditure does not support an unjust enrichment claim.

Plaintiff also appears to argue that Defendant was unjustly enriched by receiving his salary. (*See* Doc. No. at 1 ¶ 65 (saying Defendant "received payments by the County of Las Animas for performing burials, cremations, medical examinations postmortem, and funerary services").) However, Plaintiff fails to provide any explanation as to how Defendant's salary is connected to an expense she incurred. Thus, this theory also fails and Plaintiff's unjust enrichment claim is dismissed.

### E. Fraud

To state a claim for fraud in Colorado, a Plaintiff must establish: (1) that the defendant made a false representation of a material fact; (2) that the one making the representation knew it was false; (3) that the person to whom the representation was made was ignorant of the falsity; (4) that the representation was made with the intention that it be acted upon; and (5) that the reliance resulted in damage to the plaintiff." *Bristol Bay Prods., LLC v. Lampack*, 312 P.3d 1155, 1160 (Colo. 2013) (citing *Vinton v. Virzi,* 269 P.3d 1242, 1247 (Colo. 2012).

Plaintiff bases her fraud claim primarily on Defendant's alleged misrepresentation that he did not know who owned the Starkville Cemetery or how it could be accessed. (Doc. No. 1 at ¶¶ 73–74.) Even assuming this statement was knowingly false, the Complaint contains no allegations that Plaintiff detrimentally relied on it. Indeed, by Plaintiff's own allegations, subsequent to her conversation with Defendant, she contacted the Las Animas County Assessor, who informed her that Mr. Mestas owned the property, and who provided Mr. Mestas's contact information. (*Id.* at ¶ 21.) Plaintiff further alleges that she gained access to the cemetery shortly thereafter. (*Id.* at ¶ 27.) In short, while Defendant's alleged dishonesty during the phone call may

be relevant to Plaintiff's outrageous conduct claim, it is insufficient to support a separate cause of action for fraud.

Plaintiff also attempts to support her fraud claim with other allegations—for example, that Defendant "fraudulently ... buried five (5) bodies in a mass grave," and "fraudulently forged Fredrick Huff's death certificate," (Doc. No. 1 at ¶¶ 75–76.) But merely labeling conduct as "fraudulent" does not satisfy the requirements for pleading fraud. To the contrary, both Colorado and the Federal Rules impose a "heightened pleading standard" for claims of fraud, and a Plaintiff must describe, with particularity, the false representations and acts of detrimental reliance. *Rome v. Reyes*, 401 P.3d 75, 85 (Colo. Ct. App. 2017); Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). Accordingly, Plaintiff fails to state a claim for fraud, and this claim is dismissed.

## CONCLUSION

For the foregoing reasons it is

**ORDERED** that Defendant's Motion to Dismiss. (Doc. No. 15) is **GRANTED in part and DENIED in part** as follows:

1. Plaintiff's claims for Negligence, Negligence *Per Se*, Unjust Enrichment, and Fraud are **DISMISSED with prejudice**
2. Plaintiff's claims for Outrageous Conduct and Mishandling a Body remain.

It is further

**ORDERED** that the stay in this matter is **LIFTED**, and that the Parties shall file a proposed scheduling order on or before **October 6, 2025**.

Dated this 9th day of September, 2025.

BY THE COURT:

_____
Maritza Dominguez Braswell
United States Magistrate Judge